IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES MARQUITON BLACK,

                Plaintiff,

v.

LORI ALSUM and DALIA SULIENE,

                Defendants.

ORDER

09-cv-672-slc

---

In this *pro se* prisoner civil rights suit, plaintiff James Black alleges that defendants Lori Alsum and Dalia Suliene ignored his complaints of back pain and failed to provide him with a second mattress, back brace and pain medications. After screening the complaint, dkt. 9, this court allowed Black to proceed on a deliberate indifference claim against Alsum and Dr. Suliene under the Eighth Amendment.

Before the court is defendants' unopposed motion for summary judgment. Dkt. 23. In March 2010, Black received instructions on filing submissions related to summary judgment. *Procedure to be Followed on Motions for Summary Judgment*, attached to the pretrial conference order, dkt. 16. As explained in that procedure, because defendants filed a motion for summary judgment, plaintiff had to respond by filing a brief with opposing legal arguments, a response to the defendants' proposed findings of fact, along with evidentiary materials that supported plaintiff's fact responses and proposals. *Procedure*, II.A.1-3. Plaintiff was supposed to propose each fact in a separate paragraph and support each fact by referring to the evidence he had submitted to support it. *Procedure*, II.D.1-2.

Black failed to comply with these procedural rules. He did not file a brief with opposing legal arguments or supporting evidentiary materials and he did not respond to defendants' proposed findings of fact. Although Black requested and received two extensions of time to file


his responsive documents, *see* dkts. 33 and 36, he still never filed anything. Therefore, I must conclude that the facts proposed by defendants are undisputed to the extent that they are supported by admissible evidence. *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994); *Strong v. Wisconsin*, 544 F. Supp.2d 748, 759-60 (W.D. Wis. 2008). This leads me to conclude that Black has not offered evidence to support his claim that defendants were deliberately indifferent to his serious medical needs. Therefore, the defendants are entitled to summary judgment.

From defendants' proposed findings of fact, I find the following facts to be material and undisputed:

## FACTS

At all times relevant to this action, plaintiff James Black has been an inmate incarcerated at the Columbia Correctional Institution (CCI) in Portage, Wisconsin, except for a brief transfer (October 16 - 28, 2009) to the Wisconsin Resource Center for mental health concerns. Defendant Dr. Dahlia Suliene is a medical doctor at CCI. Defendant Lori Alsum was the Health Services Unit (HSU) manager at CCI from July 8, 2007 to December 5, 2009.

During his most recent admission to the Department of Corrections on March 12, 2008, Black reported that he had a history of chronic back problems and scoliosis but reported no other issues related to his back. On or about October 16, 2008, Black was transferred from Dodge Correctional Institution to CCI. At that time, Black did not have any restrictions relating to his activity level or pain medication.

Black first complained of back pain in a March 29, 2009 health services request (HSR). He subsequently filed numerous HSRs related to back pain. The only requests that Dr. Suliene reviewed were those dated March 30, 2009, April 2, 2009, April 3, 2009, April 4, 2009, April

10, 2009, April 11, 2009, April 12, 2009 and February 2, 2010.  Alsum never provided medical treatment to Black.  Her only involvement in Black's health care was to review relevant portions of his medical record after he filed five offender complaints, to provide relevant information to the Inmate Complaint Examiners assigned to those complaints, and to review and respond to Black's correspondence about being charged a co-pay.

     Dr. Suliene first examined Black on March 31, 2009 and found that he had good alignment and was ambulating without distress.  Black reported no leg pain or recent injuries at this time.  Suliene instructed Black to take Ibuprofen 400 mg threes times a day and to do recommended exercises.  On March 31, 2009, Black submitted a HSR asking for pain medication.  Another HSU worker prescribed Tylenol 325mg, 2 tablets, three times a day.  In response to Black's April 2nd, 3rd and 4th requests to see the physician, Suliene indicated that an appointment had been scheduled for him to see her.

     On April 7, 2009, Black was seen by a nurse on his housing unit after he had fallen and complained of not being able to move.  Although he was able to move his arms, head and neck, a non-emergency ambulance was called and Black was sent to the Emergency Room at Divine Savior Healthcare for assessment.  The hospital reported that Black had an exaggerated response to simple pain stimulus and diagnosed him with exacerbation of chronic lower back pain with a history of mild scoliosis.  His x-rays were within normal limits.  Divine Savior Healthcare recommended Flexeril 10 mg three times a day and Tylenol or Ibuprofen as needed for pain.  That day, Black returned to CCI, where Suliene prescribed Flexeril and continued Black on Tylenol.  Later that day, Black submitted an HSR for a second mattress.

On April 8, 2009, HSU received a call from Black's housing unit with a report that he was on the shower floor complaining that he could not move. An RN went to see Black, who reported no injuries. Security staff reported that he was moving around. Black then impersonated a rap artist for about an hour.

On April 10, 2009, Dr. Suliene saw Black for complaints of back problems and his request for a better pain killer. After reviewing the Divine Savior Healthcare Emergency Room records, which showed very mild scoliosis noted at Th 8-10 level, Suliene requested another set of x-rays. Black reported that the Tylenol, Ibuprofen and Flexeril were not working and asked for different pain medications, a sleep medication and a second mattress. Suliene ordered Black a second mattress and prescribed Benadryl 50 mg at bedtime for his muscle stiffness. She also referred Black to the Psychological Services Unit for assessment because he was depicting health-seeking behavior rather than an actual medical need.

On April 11 and 12, 2009, Black submitted HSRs asking where his second mattress was and why he was prescribed Benadryl. Suliene responded to both of these, stating that Black's request for a second mattress was noted and that he was prescribed Benadryl for muscle stiffness.

On April 14, 2009, Black was x-rayed again. The x-rays showed no evidence of malignancy or compression fractures.

On April 18, 2009, Black again requested better pain medication.

On April 20, 2009, Dr. Suliene ordered a follow-up in one month for Black's scoliosis.

On April 29, 2009, Black submitted a request for pain killers, and a RN responded that his Benadryl was not discontinued and that he was still being provided Tylenol for pain. Black refused to be placed on sick call that day.

On May 21, 2009, Dr. Suliene renewed Black's prescription for Flexeril for two more weeks.

On June 1, 2009, Dr. Suliene saw Black for a follow-up appointment to go over the April 14 x-rays showing that Black's spine was curved 12 degrees to the right. However, Black's spine had no underlying bone abnormality and otherwise was normal. Black stated that he had received an extra mattress. Suliene encouraged Black to do spine strengthening exercises and prescribed him Tylenol as needed.

On July 22, 2009, Black submitted an Information/Interview Request form asking that his medications be sent back to HSU because he did not want them anymore. His Benadryl was discontinued at that time.

On August 3, 2009, Black submitted an HSR complaining of back pain. A RN responded that he was on the schedule for a sick call appointment.

On August 27, 2009, Dr. Suliene saw Black on his housing unit for a follow-up of his back pain. Black reported that the extra mattress was not helping and asked for a back brace for back support. Suliene prescribed Amitriptyline 25mg to help his sleep and put in orders for a back brace.

On September 2, 2009, Black submitted a HSR asking when he was going to be scheduled to see an orthopedic surgeon about his back pain. The RN responded that he had an upcoming HSU appointment to be measured for his back brace.

On September 3, 2009, Suliene renewed Black's Tylenol prescription.

On September 5 2009, Black submitted an HSR asking for his Amitriptyline to be discontinued because it is a mood stabilizer not a pain medication. A RN responded that he would be seen by a nurse. Black was measured for his back brace on September 9th.

5

On October 16, 2009 Black was transferred to the Wisconsin Resource Center because of mental health concerns. Black returned to CCI on October 28, 2009. Dr. Suliene reordered Black's back brace and referred him to physical therapy for evaluation. Black still was being provided Tylenol for pain as needed.

On December 9, 2009, Black was seen by an HSU staff member for his back problems and was provided with another back brace.

On January 10, 2010, security staff used a taser on Black and he was seen by HSU per protocol. Although he had some minor complaints of injuries due to the taser, they were barely visible and there was no skin breakage. Black's primary complaint was that, due to his behavior, CCI no longer permitted him to have a second mattress.

On January 26th, Black complained of falling and hitting his head on the floor. However, he did not report any head or back pain that day, he was ambulating well and his vital signs were normal. Two days later, Black reported to Suliene that his spine was hurting and the back brace was not enough for his condition. Suliene referred his request for a second mattress to the special needs committee.

On February 2, 2010, Black submitted an HSR for an appointment with an orthopedic surgeon. On February 4, 2010, Suliene responded that an orthopedic consult had been scheduled. On February 12, 2010, Black saw Dr. O'Brien, the orthopedic surgeon, who ordered more x-rays.

On February 24th, Black was transferred to the Green Bay Correctional Institution.

On March 18, 2010, Dr. Suliene received correspondence from the Wisconsin Department of Regulation and Licensing (DRL), reporting that DRL was investigating a

complaint filed by Black regarding Dr. Suliene's medical treatment of his alleged back pain. The DRL screening panel, which included physicians, legal staff and other department staff, determined that the actions of which Black complained did not constitute a violation of either the Wisconsin Statutes or the Wisconsin Administrative Code.

## ANALYSIS

### I. Summary Judgment Standard

The purpose of summary judgment is to determine whether the parties have gathered and can present enough evidence to support a jury verdict in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001). Summary judgment is appropriate if there are no genuinely disputed material facts, and if on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The applicable substantive law will dictate which facts are material. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). A factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Roger Whitmore's Auto. Serv., Inc. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005).

In this civil lawsuit, Black, as the plaintiff, has the burden to prove his claim. Black must show what evidence he has that would convince a trier of fact to accept his version of the events. *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). Even so, in deciding defendants' summary judgment motion, this court must view all facts and draw all inferences in the light most favorable to Black because he is the non-moving party. *Schuster v. Lucent*

*Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). But Black may not simply rest on the allegations in his complaint; rather, he must come respond by presenting specific facts that would support a jury's verdict in his favor on his claims. *Hunter v. Amin*, 583 F.3d 486, 489 (7th Cir. 2009); *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). If Black fails to make a sufficient showing on an essential element of his case where he has the burden of proof, then this court must grant summary judgment to the defendants. *Celotex*, 477 U.S. at 323.

## II.  Eighth Amendment Medical Care Requirements

Prison officials have a duty under the Eighth Amendment "'to provide medical care for those whom it is punishing by incarceration.'" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In order to survive summary judgment on his Eighth Amendment claim, Black must establish that he had "an objectively serious medical need, and that [defendants were] deliberately indifferent to it." *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *see also Estelle*, 429 U.S. at 104-05.

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a layperson. *Johnson v. Snyder*, 444 F.3d 579, 584-85 (7th Cir. 2006) (citing *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000)). A medical need may be serious if it causes pain, *Cooper v. Casey*, 97 F.3d 914, 916-17 (7th Cir. 1996), or subjects the detainee to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "Deliberate indifference" means that officials were aware that their prisoner needed medical treatment, but disregarded the risk by failing to respond with

8

reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).  Thus, Black's claims are properly analyzed by answering these three questions:  1) Did Black have a serious medical need? 2) Did defendants know that Black needed care?  3) If the answers to Questions 1 and 2 both are "yes," did defendants fail to take reasonable measures to provide the necessary care to Black?

Black alleges in his complaint, *see* dkt. 1, that he was diagnosed with mild scoliosis at age 15 and has suffered from severe back ever since.  Defendants do not dispute these allegations, admitting that Suliene knew from her own examinations of Black and a review of his medical records that he had mild scoliosis at the 8-10 level that caused him pain.  From these facts, a reasonable jury could conclude that Black has a serious medical need for which Black required care.  The critical question is whether defendants took reasonable measures to provide Black with the care he needed.  The answer is yes, they did.

Black alleges in his complaint that defendants ignored his complaints of back pain and refused to provide him with a second mattress, back brace or effective pain medication.  The evidence establishes that Black's allegations are incorrect.  Neither defendant ignored Black's complaints of pain. Dr. Suliene was appropriately responsive to Black's persistent requests.  She saw Black many times throughout 2009 and 2010.  After seeing Black for the first time in late March 2009, Dr. Suliene prescribed Ibuprofen for his pain.  In early April, 2009, Dr. Suliene added Flexeril and Tylenol, based on the recommendation of Divine Savior Healthcare.  She also prescribed Benadryl for muscle stiffness and granted Black's request for a second mattress. Contrary to Black's assertions, Dr. Suliene also ordered a back brace for him in August 2009. Black was measured for the brace on September 9, 2009.  Dr. Suliene ordered another back

brace for Black after he returned to CCI from WRC in late October 2009. Black received that brace on December 9, 2009. Although CCI later removed Black's second mattress for security reasons, Dr. Suliene put in a request for another one after Black reported that the back brace was not providing sufficient relief. In addition to taking these steps, Dr. Suliene regularly evaluated Black, ordered x-rays, referred him to physical therapy and ordered an orthopedic consult.

Black obviously disagrees with Dr. Suliene's treatment choices and would have preferred stronger pain medication and more timely referrals, but he has not established that Dr. Suliene's decisions were medically inappropriate. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) (plaintiff must show that doctor acted with such blatant inappropriateness as to imply actions or omissions were not actually based on medical judgment); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (prisoner's dissatisfaction with doctor's prescribed course of treatment does not give rise to constitutional claim).

Black has not shown that Alsum acted with deliberate indifference to his medical condition by reviewing his medical records or by relying on Dr. Suliene's decisions when Alsum provided relevant information to the Inmate Complaint Examiners. *Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir. 2006) (affirming summary judgment for health care administrator who relied on plaintiff's medical record and doctor's treatment decisions); *Johnson v. Doughty*, 433 F.3d 1001, 1015 (7th Cir. 2006) (affirming directed verdict for health care administrator who responded appropriately to inmate's complaints of worsening symptoms and relied reasonably on doctor's professional opinions).

No reasonable jury could find from these undisputed facts that either defendant was reckless or deliberately indifferent to Black's back pain. Therefore, both defendants are entitled

to summary judgment. Accordingly, it is unnecessary to consider defendants' remaining arguments about official capacity, qualified immunity or Alsum's personal involvement.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Lori Alsum and Dr. Dalia Suliene is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 26th day of October, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge